UNITED STATES of America,
Plaintiff-Appellee,

v.

William David DAWSON,
Defendant-Appellant.

No. 77-5012.

United States Court of Appeals,
Fifth Circuit.

Nov. 14, 1977.

Louis Moore, Jr., Asst. Federal Public Defender, John P. Volz, Federal Public Defender, New Orleans La., for defendant-appellant.

Dennis Dannel, Asst. U. S. Atty., Gerald J. Gallinghouse, U. S. Atty., New Orleans, La., for plaintiff-appellee.

Before WISDOM, SIMPSON and TJOFLAT, Circuit Judges.

TJOFLAT, Circuit Judge:

I

In this direct appeal, the appellant, William David Dawson, attacks his conviction for violating 18 U.S.C. § 2312 (1970) (Interstate transportation of a stolen motor vehicle). He contends that he was denied a fair trial because he was forced to stand trial before a jury in clothing which was furnished him by the United States Bureau of Prisons. Appellant also challenges the sufficiency of the evidence upon which his conviction is based. In affirming his conviction we discuss only his fair trial argument, as the sufficiency of evidence challenge is devoid of merit.

Throughout his one-day trial appellant wore an ordinary khaki shirt and trousers provided by the Bureau. Prior to trial he

had filed a motion for the production and return of the civilian clothing he was wearing at the time of his arrest, but the motion was denied.[1] On the day of trial, before the jury voir dire commenced and out of the jury's presence, appellant objected to being tried in what he considered "Jailhouse clothes." The court closely examined appellant's clothing while engaging him in a discussion about his objection. The discussion was concluded when the court found that the appellant projected a neat and clean appearance which gave no indication that he was in confinement.[2]

1. There were no reasons given by the trial court for denying this motion. The request for the clothing was made in a multi-faceted discovery motion in which appellant sought the production of evidence claimed to be material and relevant to the preparation of his defense.

2. The colloquy between the court and appellant was as follows:

THE COURT:
Counsel, is it not a fact that this khaki uniform that you have reference to is nothing but an ordinary pair of khaki pants with no identification?
MR. MOORE:
The only marks are what purports to be "arrows" on the legs.
THE COURT:
What is that?
MR. MOORE:
Looks like little arrows or "zig-zags" on the seam.
THE COURT:
What?
MR. MOORE:
Arrows or wither (sic) it is a zig-zag. Looks like marks but the shirt doesn't have any markings on it at all, just looks like zig-zags on the seam.
THE COURT:
All right, you mean threads on the seam?
MR. MOORE:
Judge, it looks like a mark or some type of markers, but it doesn't read any particular institution on it.
THE COURT:
Other than that, they are what we usually see and refer to as a pair of khaki trousers.
MR. MOORE:
They are khaki trousers.
THE COURT:
All right, it (sic) that is an objection, it is overruled. We will proceed.
MR. MOORE:
I would like the record to reflect that the zig-zags or what purports to be arrows are on one seam, on the outside of the pants. It is on one leg.
THE COURT:
All right.

\*　　\*　　\*　　\*　　\*　　\*

THE COURT:
Let the defendant step up here, please. I want the record—no, just stand right out there. I can see you, Mr. Dawson, from here.

I make these comments for the record in view of the fact that your attorney had made objection earlier, evidently at your behest, that you not be placed on trial attired as you are. I want the record to show that I have observed your clothing.
You are dressed in a pair of clean khaki pants, are you not?
THE DEFENDANT:
Relatively.
THE COURT:
They are relatively clean, are they not, and you are dressed in a sort of tan shirt, are you not, sir?
THE DEFENDANT:
Yes, I am.
THE COURT:
And it is clean, is it?
THE DEFENDANT:
It's got a lot of paint on it.
THE COURT:
Paint? Would you show me where the paint is?
THE DEFENDANT:
All down the arm.
THE COURT:
I beg your pardon?
THE DEFENDANT:
All down the arms.
THE COURT:
Well, I cannot see it from here and I have got 20/20 vision, corrected with glasses, and you pointed to the left arm?
THE DEFENDANT:
Yes, sir.
THE COURT:
And you are now standing about ten to 12 feet from me, would you agree?
THE DEFENDANT:
Yes, sir.
THE COURT:
That shirt, if it has some paint on it, it is a rather small amount on that left sleeve?
THE DEFENDANT:
Here is my main objection.
THE COURT:
Just a minute.
THE DEFENDANT:
It is not a small amount. I mean, you know, quite a large amount, actually. It's all over the shirt, if you want to get right down to it.
THE COURT:
Little specks?
THE DEFENDANT:
No, big splotches.
THE COURT:

For purposes of this appeal neither appellant's trial clothing nor the civilian clothing he had requested were made a part of the record. When, following oral argument, we requested counsel to incorporate the clothing in the record, the Bureau of Prisons was unable to produce it. However, counsel have produced a set of khakis which they agree are substantially similar to the clothes worn at trial. We have examined the clothing and find, as did the court below, that it bears no characteristics which distinguish it as prison garb.

## II

■ The presumption of innocence, although not articulated in the Constitution, is a basic component of our system of criminal justice. *Estelle v. Williams*, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976), *Coffin v. United States*, 156 U.S. 432, 15 S.Ct. 394, 39 L.Ed. 481 (1895). Because of this presumption "[n]o insinuations, indications or implications suggesting guilt should be displayed before the jury, other than admissible evidence and permissible argument." *Brooks v. State of Texas*, 381 F.2d 619, 624 (5th Cir. 1967). In safeguarding the presumption of innocence we have held that trying an accused in his prison clothing infringed this fundamental right. *E. g.,*

*Boswell v. State of Alabama*, 537 F.2d 100 (5th Cir. 1976); *Hernandez v. Beto*, 443 F.2d 634 (5th Cir. 1967), *cert. denied*, 404 U.S. 897, 92 S.Ct. 201, 30 L.Ed.2d 174 (1971). Because our concern in prison garb cases is with the impairment of the presumption of innocence and not with a defendant's "right" to be tried in civilian clothing of his own choosing, *see United States v. Casey*, 540 F.2d 811 (5th Cir. 1976), we must determine, on a case by case basis, whether a given set of prison clothing improperly projects an implication of guilt.

■ In *Hernandez*, the defendant was tried in clothing that had "Harris County Jail" conspicuously stamped all over it. It was the appearance of these words which led the court to find that an indication of guilt was improperly presented to the jury, not the clothing per se. In *United States v. Fideler*, 457 F.2d 921 (5th Cir. 1972), the court distinguished the *Hernandez* case, saying that ". . . references in *Hernandez* to prison 'clothing' or 'garb' clearly mean an *identifiable prison uniform . . . .*" *Fideler* at 922 (emphasis added). Thus, the fact that the defendant was tried in clothing that he wore while in the prison was not deemed prejudicial absent characteristics clearly identifying the person wearing the clothing as a prisoner.

I disagree they are big splotches, but it is otherwise clean, is it not?
THE DEFENDANT:
    Yes.
THE COURT:
    You have a mustache?
THE DEFENDANT:
    Yes, I do.
THE COURT:
    And your hair is what, collar length, is it not?
THE DEFENDANT:
    Yes, sir.
THE COURT:
    And your sideburns are about midway down your jaw?
THE DEFENDANT:
    Yes, sir.
THE COURT:
    Would you say that?
THE DEFENDANT:
    Yes, sir.
THE COURT:
    And you had a fresh shave this morning?
THE DEFENDANT:
    Yes, I did.

THE COURT:
    And your hair is combed?
THE DEFENDANT:
    Yes.
THE COURT:
    And you present a rather clean appearance, do you not?
THE DEFENDANT:
    I don't think so.
THE COURT:
    You do not think so? Well, the Court does and the record will reflect that.

    *   *   *   *   *   *

THE COURT:
    Before you bring in the jury, I would like to say further for the record, in connection with the defendant's garb, I would observe for the record that it did not appear to be the usual prison garb and it does not, in the Court's view, give any indication in any way that the defendant is in confinement.
    The Court finds that the defendant's attire is not likely to prejudice the defendant.

    *   *   *   *   *   *

Similarly, in *Casey*, the court distinguished the prison clothes cases by saying that no constitutional violation occurs so long as the clothing does not badge the defendant as a criminal in the jury's eyes. It is the extent to which the defendant's clothing is communicative of his status as a prisoner (and inferentially a criminal) which determines whether or not he was denied a fair trial. *See also*, ABA Standards, Trial by Jury, § 4.1(b), p. 93 (App. Draft 1968), wherein the committee states:

> This standard is intended to prevent the appearance of a defendant or witness in garments which in effect are a "brand of incarceration." . . . The person may appear in unmarked garments supplied by the custodial authorities . . . .

■ We conclude that the plain khaki clothing worn by the appellant did not mark him as a prisoner in this case. Accordingly, he was not denied a fair trial.[3]

AFFIRMED.

**3.** We note in passing that a district court in our circuit has previously commented on the resemblance between khaki attire and prison uniforms, although the precise question of the propriety of trying an accused in khaki clothing was not presented. In *Dennis v. Dees*, 278 F.Supp. 354 (E.D.La.1968), *disapproved on other grounds, United States v. Henderson*, 472 F.2d 556 (5th Cir. 1973), the court commented on the neutral image projected by khaki dress saying:

"When this particular petitioner was presented here for his habeas corpus hearing, he was, as most others have been, dressed in khaki pants and shirt, with no indication that he was necessarily wearing a prison uniform." *Dennis* at 359.

We also note that *Dennis* was cited by the Supreme Court in *Estelle v. Williams* as presenting an analysis of the prison garb issue.