Affirmed and Opinion filed October 31, 2002
















Affirmed and
Opinion filed October 31, 2002.

 

 

In The

 

Fourteenth Court of Appeals

_______________

 

NO. 14-01-00581-CR

_______________

 

MITCHELL WASH
SHELBY, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

______________________________________________

 

On Appeal from 183rd District Court

Harris County, Texas

Trial Court Cause No. 840,639

______________________________________________

 

O P I N I O N

            A jury found appellant, Mitchell
Wash Shelby, guilty of aggravated sexual assault of a child, his stepdaughter,
and the trial court assessed punishment at life imprisonment.  Shelby raises five issues, contending that
(1) the trial court should have charged the jury on the lesser-included offense
of indecency with a child; (2) the trial court should have sua sponte instructed the jury that
extraneous offenses had to be proved beyond a reasonable doubt; (3) the trial
court erred in denying him a hearing on an issue in his motion for new trial;
(4) he received ineffective assistance of counsel because he was tried without
objection while wearing prison garb; and (5) the trial court erred in admitting
his admissions of sexual abuse to a psychiatrist.  We affirm. 


 

                                                               BACKGROUND

            Shelby was the stepfather to K.F.
and the only father she had ever known. 
When she was ten or eleven years old, Shelby invited her to sit on him
while he lay on the floor, dressed only in his underwear.  K.F. did so, and Shelby rocked back and forth
while making a noise like a “choo-choo” train.  Over a period of months, Shelby’s sexual
behavior with K.F. escalated to touching her breasts and vagina above and below
her clothing.  He also forced K.F. to
touch his penis above and below his clothing and to perform oral sex.  K.F. reported this behavior and was sent to
live with Shelby’s sister.

            However, while visiting her mother,
stepfather, and half-brother, the abuse continued.  Ultimately, Shelby began
attempting and then completing sexual intercourse with K.F.  K.F. testified that the first attempts at
intercourse occurred while her family lived in Fort Bend County.  After her family moved to Harris County the summer
after K.F.’s seventh grade, the sexual intercourse
continued through K.F.’s eighth grade.  She was twelve and thirteen years old at that
time.  Finally, after K.F. turned
fourteen, she reported the sexual acts to her mother, stepsister, and school
counselor. 

                                                LESSER-INCLUDED OFFENSE

            In his first issue, Shelby contends
that the trial court erroneously refused to instruct the jury on the
lesser-included offense of indecency with a child.  In this case, the aggravating factor for
sexual assault was that Shelby’s
stepdaughter was younger than fourteen.  Shelby argues
that the precise date of genital to genital contact in Harris County was never
established and that the jury could have concluded it occurred after his
stepdaughter’s fourteenth birthday.  He
further argues the evidence, if believed, indicates that fondling occurred,
therefore, the charge should be indecency with a child.

            Shelby was
indicted for aggravated sexual assault, described as intentionally causing his
stepdaughter’s sexual organ to contact his own. 
The State presented evidence that the offense occurred around September 1, 1998 in Harris County.  A person commits aggravated sexual assault if
(1) he intentionally or knowingly causes the sexual organ of a child to contact
the sexual organ of another person; and (2) the victim is younger than fourteen
years old.  Tex. Pen. Code Ann. § 22.021(a)(1)(B)(iii) & (a)(2)(B)
(Vernon Supp. 2002).  The victim, K.F.,
turned fourteen on October 3,
 1999, when she was in the ninth grade.

            “To determine if a defendant is
entitled to a lesser-included offense instruction, a two prong test applies:
(1) the lesser-included offense must be included within the proof necessary to
establish the offense charged, and (2) some evidence must exist in the record
that would permit a jury rationally to find that if the defendant is guilty, he
is guilty only of the lesser included offense.” 
Wesbrook v. State, 29 S.W.3d 103, 113 (Tex. Crim. App. 2000) (plurality op.), cert. denied, 532 U.S. 944 (2001). 
Indecency with a child[1] can
be a lesser-included offense of aggravated sexual assault of a child on a
case-by-case basis.  See Cunningham v. State, 726 S.W.2d 151, 153 (Tex. Crim. App. 1987).

            Shelby’s
stepdaughter, K.F., testified that he began intercourse[2] with her while
she was in eighth grade (the school year 1998 to 1999).  K.F. would have been twelve or thirteen
during this time.  K.F. testified that Shelby had
intercourse with her “a lot,” sometimes wearing a condom.  She also testified that the intercourse began
when her family lived in Fort Bend County, but
continued after they moved to Harris County the summer
after her seventh grade in school.  K.F.
explained that the family moved to Harris County in summer
1998 (when she was age twelve).  She
later testified that they moved to Harris County in summer
1999 (when she was thirteen, before her fourteenth birthday in October) and
then stated she did not know when they moved to Harris County.  Despite confusion with the dates, her
testimony was clear that genital to genital contact occurred when she was in
the eighth grade and her family lived in Harris County.  

            In February 2000, when K.F. was age
fourteen and in the ninth grade, she told her mother and stepsister about the
abuse.  Child Protective Services immediately
took K.F. into its care, where she was then interviewed and examined.  K.F. explained to a the doctor that her
stepfather had been touching her “in the middle and chest area” with “his
thing.”  She was not specific in this
interview about the time or place of such contact.  Her physical examination on February 7, 2000 revealed
two healed injuries to her hymen, indicating penetration.

            K.F.’s
mother testified that her family moved to Harris County in summer
1998, although she was unsure about K.F.’s grade
level in school at that time.  She
testified that in January 2000, K.F. told her that Shelby was
“messing with her again.”  The mother
understood this to mean that Shelby was
touching K.F. inappropriately in a sexual way. 
When cross-examined about K.F.’s outcry, the
mother was confused by questions whether K.F. specified the abuse occurred in
1998.  Finally, the mother testified that
K.F. told her Shelby had
“touched her inappropriately” in 1998. 
She stated that “the act” to which K.F. referred happened in both Fort Bend and Harris
counties.  In addition to “touching her
in an inappropriate way,” the mother testified that K.F. told her Shelby “had been
fondling her and had her doing things that wasn’t right.”  K.F.’s mother
stated that K.F. “did not say exactly how many times or what happened in
detail.”

            As for her own observations, K.F.’s mother testified she did not see inappropriate
conduct between her husband and daughter in 1998.  Further, the family had been in therapy after
summer 1998, and no allegations of on-going inappropriate behavior, touching,
or sexual contact had been discussed with the therapist.

            Further, the evidence showed that Shelby admitted
“inappropriate sexual activity,” that he “sexually molested” K.F., and that he
had “relapsed in his sexual acting out behavior with minors.”  In particular, he admitted “acting out” with
K.F., but blamed her for “initiation and 
coercion of this act.”

            Even if indecency with a child is
considered a lesser-included offense of aggravated sexual assault depending on
the victim’s age, Shelby does not
meet the second prong of the test relative to K.F.’s
age at the time of genital to genital contact. 
There was evidence that Shelby engaged in
genital to genital contact with K.F. when she was in the eighth grade.  She would have been twelve or thirteen years
old during that time.  Nothing in the
evidence shows that such contact occurred in Harris County only after K.F. turned fourteen in
October 1999 (thus removing the aggravated element of the crime).  See Wesbrook, 29 S.W.3d at 113.

            Lastly, Shelby argues
that the jury could have found him guilty of indecency with a child for
“non-sexual organ contact.”  He was not
indicted for conduct encompassing fondling of K.F.’s
genitals, anus, or breasts without contact between sexual organs.  See
Tex. Pen. Code Ann. § 21.11.  Thus, the proof necessary to establish
indecency with a child under a theory of fondling is not included within the
proof necessary to establish the charged offense, sexual organ to sexual organ
contact.  See Braughton v. State, 749 S.W.2d 528,
531 (Tex. App.—Corpus Christi 1988, pet. ref’d)
(touching of genitals with hand requires different proof than penetration with
penis).  Therefore, the lesser-included
offense for “non-sexual organ contact” is not included within the proof
necessary to establish the offense charged.

            Because Shelby was not
entitled to an instruction on indecency with a child, we overrule issue one.




                                         REASONABLE DOUBT INSTRUCTION

            In his second issue, Shelby contends
that the trial court erred in failing to sua sponte instruct the jury during the
guilt/innocence phase of trial that the State must prove extraneous offenses
beyond a reasonable doubt.  We
disagree.  “[I]f the defendant so requests at the guilt/innocence phase of
trial, the trial court must instruct the jury not to consider extraneous
offense evidence . . . unless it believes beyond a reasonable doubt that the
defendant committed the extraneous offense.” 
George v. State, 890 S.W.2d
73, 76 (Tex. Crim. App. 1994) (emphasis added).  The trial court is not required to instruct
the jury absent a request.

            Shelby further
argues that regardless of whether he should have objected, he was egregiously
harmed by the absence of the instruction. 
Where there has been no objection, as here, we reverse only if the
defendant has shown that the error caused him egregious harm.  Abdnor v. State,
871 S.W.2d 726, 732 (Tex. Crim. App. 1994).  Errors resulting in egregious harm are those
that affect “the very basis of the case,” deprive the defendant of a “valuable
right,” or “vitally affect a defensive theory.” 
Almanza v. State, 686 S.W.2d 157, 172 (Tex. Crim. App. 1985) (op. on reh’g).  To determine if the defendant suffered
egregious harm, we consider: (1) the charge itself; (2) the state of the
evidence, including contested issues and the weight of the probative evidence;
(3) arguments of counsel; and (4) any other relevant information.  Hutch
v. State, 922 S.W.2d 166, 171 (Tex. Crim. App.
1996).  “The purpose of the review is to
find actual harm to the accused, not mere theoretical harm.”  Webber
v. State, 29 S.W.3d 226, 236 (Tex. App.—Houston [14th Dist.] 2000, pet. ref’d).

            Shelby argues that the “mishmash” of
extraneous offense evidence, lack of definite offense dates, and lack of
guidance from a limiting instruction allowed the jury to convict him based on
sheer confusion.  We disagree that he
suffered egregious harm.  The extraneous
offense evidence was offered by the State to demonstrate the relationship
between Shelby and K.F.  See Tex.
Code Crim. Proc. Ann. Art. 38.37, § 2 (Vernon Supp. 2002) (evidence of
other crimes or acts committed by a defendant against the child victim is
admissible to show defendant’s state of mind and the previous and subsequent
relationship with the child).  The
contentious issue at trial was the year and location of sexual organ to sexual
organ contact.  In jury argument,
Shelby’s counsel reminded the jury that they must find sexual organ to sexual
organ contact occurred in Harris County to find Shelby guilty.  Similarly, the State reiterated K.F.’s testimony that Shelby had intercourse with her when
the family moved to Harris County. 
Finally, there is no language in the jury charge that would have caused
egregious harm to appellant. 
Accordingly, we overrule issue two.

                                          MOTION FOR NEW TRIAL HEARING

            Shelby contends
in his third issue that the trial court was required to hold a hearing on his
motion for new trial, in which he alleged trial counsel was ineffective for
failure to file a motion to recuse.  We review a trial court’s denial of a hearing
on a motion for new trial for an abuse of discretion.  State
v. Gonzalez, 855 S.W.2d 692, 696 (Tex. Crim. App.
1994).  Under that standard, we reverse
“only when the trial judge’s decision was so clearly wrong as to lie outside
that zone within which reasonable persons might disagree.”  Id. at 695
n.4.  We may not substitute our judgment
for that of the trial court, but rather must decide whether the trial court’s
decision was arbitrary or unreasonable.  Id.  

            The purpose of a hearing on a motion
for new trial is for a defendant to develop the issues raised in the
motion.  Jordan v. State, 883 S.W.2d 664, 665 (Tex. Crim.
App. 1994); Buerger v. State, 60 S.W.3d 358, 361 (Tex.
App.—Houston [14th
Dist.] 2001, pet. ref’d).   When a motion for new trial presents matters
that are not determinable from the record, the trial court abuses its
discretion by failing to hold a hearing; conversely, if the motion presents 

matters
that are determinable from the record, the trial court does not abuse its
discretion by failing to conduct a hearing. 
Reyes v. State, 849 S.W.2d
812, 816 (Tex. Crim. App. 1993).  Nevertheless, a defendant does not have an
absolute right to a hearing on a motion for new trial.  Id. at
815.   Prerequisite to a hearing, the
motion for new trial must be supported by an affidavit specifically showing the
truth of the grounds alleged as a basis for a new trial.  Id. at
816.  Affidavits which are conclusory in nature and unsupported by facts are not sufficient
to put the trial court on notice that reasonable grounds for relief exist.  Jordan,
883 S.W.2d at 665; Buerger,
60 S.W.3d at 362.

            Shelby complains
that his motion and affidavit raised a matter not determinable from the
record.  Specifically, he argues he
received ineffective assistance of counsel because his attorney failed to file
a motion to recuse based on the trial judge’s
position on the board with the Children’s Assessment Center, which
thus denied him a fair and impartial trial. 
Shelby notes that
the investigating officer and the examining pediatrician, who appeared as
witnesses, were involved with the Children’s Assessment Center.  He also cites an ethics opinion issued by the
Committee on Judicial Ethics, which found that membership by a judge on the
Children’s Assessment Center judicial
council violates Canons 2, 2B, and 4 of the Code of Judicial Conduct.  See
Comm. On Jud. Ethics, State Bar of Tex., Op. 270 (2001); Tex. Code Jud. Conduct, Canons 2, 2B
& 4, reprinted in Tex. Gov’t Code Ann., tit. 2, subtit. G app. B (Vernon 1998 & Supp. 2002).

            Whether Shelby received
ineffective assistance of counsel is not determinable from the record.  Therefore, we must decide whether Shelby’s
affidavit provides reasonable grounds which would entitle him to a hearing on
his motion for new trial.  See Jordan, 883
S.W.2d at 665.  In his affidavit, Shelby asserted
in pertinent part:

 

class=Section2> 

Before
trial, I told [trial counsel] to file a motion to have [the trial judge] recused because she is a member of the board of the
Children’s Assessment Center.  I had read in the newspaper that all judges
had been ordered to either recuse themselves from CAC
cases or step down from the board. [Trial counsel] did not try to have [the
trial judge] recused, and I do not believe that I
received a fair and impartial trial for that reason.

 

class=Section3> 

Shelby has failed
to allege grounds that would entitle him to a hearing on his motion for new
trial because his assertions are conclusory or unsupported
by facts in several aspects.

            First, a motion to recuse must be filed at least ten days before trial
begins.  Madden v. State, 911 S.W.2d 236, 239 (Tex. App.—Waco 1995, pet. ref’d); Tex. R. Civ.
P. 18a.  Shelby does not
aver in his affidavit that he instructed his attorney to file such a motion
more than ten days before trial.  Second,
the ten-day notice provision does not bar a motion to recuse
if an appellant does not know grounds for recusal
until after that time.  Rosas v. State, 76 S.W.3d 771, 774 (Tex. App.—Houston [1st
Dist.] 2002, no pet.).  Shelby does not
set forth that he first learned about the trial judge’s membership with the CAC
within ten days of trial.

            Third, an attorney’s mere failure to
file a motion to recuse is not categorically
ineffective assistance of counsel.  Madden, 911 S.W.2d at 241.  Neither are a judge’s ethical violations
alone grounds for recusal.  Rosas,
76 S.W.3d at 775.  The judge’s violations
must be of such a nature and extent as to deny an appellant due process of
law.  See
id.  In his motion and affidavit, Shelby concludes
that he did not receive a fair and impartial trial, but does not support the
conclusion with any facts.  By not
supporting his averments with facts, Shelby’s
affidavit is not sufficient to place the trial court on notice that reasonable
grounds for relief exist.  Jordan, 883 S.W.2d at 665; Buerger, 60
S.W.3d at 362.  Accordingly, we hold that
the trial court did not abuse its discretion in denying a hearing on the motion
for new trial.  Issue three is overruled.

                                                                PRISON GARB

            In his fourth issue, Shelby contends
that the trial court erred in failing to grant a new trial after Shelby
asserted that he was tried while wearing prison garb.  For the two days of trial before the jury,
Shelby wore a prison-issued white shirt, white pants, and tennis shoes.  Although the shirt, which had a collar and
short-sleeves, and pants were not marked as prison garb, the sides of Shelby’s
white tennis shoes were printed with his prisoner number in large, red numbers.  Shelby testified that the jury observed him
walk into the courtroom in the white shirt, pants, and tennis shoes.  He also approached the bench while wearing
this uniform, and the lower half of his body was visible beneath the table
where he sat.

            A defendant must not be compelled to
appear for trial while dressed in prison clothes if he or she timely objects. 
Randle v. State, 826 S.W.2d
943, 944–45 (Tex. Crim. App. 1992).  In this case, direct appeal has been waived
because Shelby’s attorney failed to object during the trial.  In order to preserve a claim of error for
appellate review in a criminal case, the complaining party must make a timely
and sufficiently specific objection. 
Tex. R. App. P. 33.1(a)(1). 
However, in his motion for new trial , Shelby complains that his
attorney was ineffective in failing to object to Shelby being tried in his
prison uniform.

            To prove ineffective assistance of
counsel, a defendant must first show that counsel’s performance fell below an
objective standard of reasonableness.  Strickland v. Washington, 466 U.S. 668,
688 (1984); Thompson v. State, 9
S.W.3d 808, 812 (Tex. Crim. App. 1999).  Second, appellant must prove that counsel’s
deficient assistance, if any, prejudiced him. 
Thompson, 9 S.W.3d at
812.  Thus, appellant must show a
reasonable probability that, but for counsel’s errors, the result of the
proceeding would have been different.  Id. 
“A reasonable probability is a probability sufficient to undermine
confidence in the outcome.”  Id. 
The ultimate focus of our inquiry must be on the fundamental fairness of
the proceeding whose result is being challenged.  Strickland,
466 U.S. at 697.  Allegations of
ineffectiveness must be firmly founded in the record.  McFarland
v. State, 928 S.W.2d 482, 500 (Tex. Crim. App.
1996).

            The testimony taken at the motion
for new trial hearing revealed that the week before trial, counsel asked Shelby
whether he had clothes for trial.  Shelby
told him that he did not have other clothes. The day trial began, Shelby
arrived in the courthouse in his orange, Harris County Jail jumpsuit but
changed into his white Texas Department of Justice (TDJ) pants and shirt with
the labeled, white tennis shoes.  He
again complained to his attorney, stating that he could not go to trial in his
prison clothes.[3]  His attorney never objected, and Shelby sat
at the end of counsel table through two days of jury trial in his TDJ clothing
and shoes. 

            Shelby’s court-appointed trial
counsel also testified at the new trial hearing.  He verified that Shelby arrived at the
courthouse the morning of trial in his orange jail jumpsuit, but that the
bailiffs took him away “to get him dressed out.”  When Shelby returned in his white TDJ
uniform, trial counsel “did not snap to the fact that they were TDJ clothes.”  Thus, he continued with jury selection.  “At some point,” Shelby complained to him
that his clothes were jail-issued. 
Counsel chose to do nothing because by that time the jury had seen
Shelby’s clothing and “the damage had been done.”  Further, in counsel’s opinion, the clothing
was not prejudicial.  However, counsel
did not remember Shelby’s shoes.  He did
not explain why he allowed Shelby to wear the same outfit on the second day of
trial.  He also did not testify about
whether he spoke with Shelby the week before trial about clothing.

            The State argues that Shelby’s
clothing did not bear the indicia of incarceration.  Certainly, a plain white shirt and pants,
with no markings, does not necessarily indicate incarceration.  See
United States v. Dawson, 563 F.2d 149, 152 (5th Cir. 1977) (plain khaki
clothing, though jail-issued, did not mark defendant as a prisoner).  However, Shelby’s tennis shoes were marked in
red with his prison number.  The State
asserts there is no evidence that the jury saw the shoes.  However, Shelby’s uncontroverted
testimony was, “The jury seen [sic] me come in with the clothes on, and my
shoes.”  The State also argues there is
no evidence that the jury knew the numbers were more than mere decoration.[4]  However, we hold that the large, red numbers
printed on the white tennis shoes, with the white pants and shirt, were
sufficient indicia of incarceration.  See Scott v. State, 80 S.W.3d 306, 308
(Tex. App.—Fort Worth 2002, no pet.) (holding that pants printed with numbers
“P-5, P-6, No. 27, No. 25” sufficiently bore indicia of incarceration, although
not expressly labeled as “jail” issued). 
“[I]f an accused asserts his right to not be placed before the jury
while wearing clothing which bears the indicia of incarceration, it is the duty
of . . . the accused’s attorney . . . to offer the
accused an opportunity to wear civilian clothes.”  Randle,
826 S.W.2d at 945. Further, the record eliminates the possibility that the
failure to object was trial strategy.  See Estelle v. Warren, 425 U.S. 501, 508
(1976); Randle, 826 S.W.2d at
945.  Accordingly, we find Shelby’s trial
attorney performed below an objective standard of reasonableness.

            We next consider whether Shelby has
proved prejudice from counsel’s deficient performance.  See
Strickland, 466 U.S. at 688.  In
asserting prejudice, Shelby relies on cases where convictions have been
reversed because the trial court compelled the defendant to be tried in jail
garb.  Shelby, however, was not compelled
by the trial court to be tried in jail garb because the issue of his attire was
not raised with the trial court until after his conviction.  If trial counsel had timely requested that
Shelby be tried wearing civilian clothes and the trial judge had denied that
request, we would engage in a harm analysis under Texas Rule of Procedure 44.2
in which neither Shelby, nor the State, would bear the burden of showing
harm.  See Johnson v. State, 43 S.W.3d 1, 4 (Tex. Crim.
App. 2001).  

            Shelby, however, contends his
counsel was ineffective for failing to request that he be tried in civilian
clothes.  Ineffectiveness claims alleging
a deficiency in attorney performance are subject to a general requirement that
the defendant affirmatively prove prejudice because the government is not
responsible for, and hence not able to prevent, attorney errors that will
result in reversal of a conviction or sentence. 
Strickland, 466 U.S. at 693,
104 S. Ct. at 2067.  The primary reason
for requiring a defendant to prove prejudice is that most ineffective
assistance of counsel claims do not involve any oppressive state action.  Id.; Mitchell v. State, 989 S.W.2d 747, 748
(Tex. Crim. App. 1999).

            Shelby contends his counsel’s
failure to object to being tried in jail garments resulted in an unfair trial
in that his presumption of innocence was destroyed.  He has failed, however, to prove prejudice
under Strickland.  Shelby does not direct us to evidence that
the outcome of trial would have been different but for counsel’s error.  There is compelling evidence that Shelby forced
intercourse on his young stepdaughter, K.F. 
Further, there was no verbal reference to prison attire during
trial.  Although witnesses identified
Shelby by the color of shirt or by the color of his shirt and pants, none
identified his garb as a prison uniform or specifically pointed to his
shoes.  In short, our review of the
record does not reveal the proof of prejudice necessary for reversal under Strickland’s second prong.  Accordingly, we overrule issue four. 

                                                    ADMISSION OF EVIDENCE

            In his fifth issue, Shelby contends
the trial court erroneously admitted under Rule of Evidence 509(b) admissions
made by Shelby in seeking treatment for cocaine abuse.  After K.F.’s
outcry, Shelby sought admission to a hospital, where he admitted to sexually
acting out with minors and with K.F. in particular.  Rule of Evidence 509(b) provides: 

 

class=Section4> 

There
is no physician-patient privilege in criminal proceedings.  However, a communication to any person
involved in the treatment or examination of alcohol or drug abuse by a person
being treated voluntarily or being examined for admission to treatment for
alcohol or drug abuse is not admissible in a criminal proceeding.

 

class=Section5> 

            A psychiatrist, Dr. Ranjit Chacko, testified in a voir dire examination that Shelby was voluntarily admitted
to The Methodist Hospital for depression, with suicidal ideation, after he
entered the emergency room claiming he wanted to kill himself.  The psychiatric unit at the hospital then conducted
a history to see what stressors may have been influencing Shelby’s depression.
Shelby identified stressors such as desperation because his only alternative
was jail; violations of his probation; relapse in sexual acting out with minors
(specifically, K.F.); financial stressors; having to leave his wife; and
cocaine.  Further, tests revealed he was
under the influence of cocaine when admitted. 
Dr. Chacko testified that cocaine use could
possibly cause depression.  The trial
court permitted Dr. Chacko to testify before the jury
about Shelby’s comments on sexually acting out, but disallowed testimony about
cocaine use or violation of probation.

            We review a court’s ruling on the
admissibility of evidence under an abuse of discretion standard.  Green
v. State, 934 S.W.2d 92, 101–02 (Tex. Crim. App.
1996).  We will not reverse such a ruling
so long as it falls “within the ‘zone of reasonable disagreement.’”  Id.
at 102 (quoting Montgomery v. State,
810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh’g)).  Further,
error may not be predicated upon a ruling which admits or excludes evidence
unless a substantial right of the party is affected.  See
Tex. R. Evid. 103(a).

            Admission of Dr. Chacko’s
testimony in this case is akin to Foreman
v. State, 995 S.W.2d 854 (Tex. App.—Austin 2000, pet. ref’d),
in which the court of appeals considered Rule of Evidence 509(b).  In Foreman,
the defendant sought treatment at a Veteran Administration’s hospital for
pedophilia and the resulting depression caused when his family learned about
his pedophilia.   Id. at 856.  The defendant in
Foreman had previously sought
treatment at the hospital for alcohol and drug abuse.  Id.  However, in the most recent admission,
alcohol and drug abuse was just one factor considered in the doctor’s overall
examination of the defendant, but was not a primary or even a major
concern.  Id.  Similarly, Dr. Chacko’s testimony reveals that Shelby sought treatment at
the hospital for depression and suicidal thoughts after K.F.’s
outcry.  Although cocaine was in his
body, the evidence supports the inference that Shelby was not being treated nor
seeking admission for treatment for drug abuse. 
Thus, the trial court did not abuse its discretion in overruling
Shelby’s Rule 509(b) objection and in admitting Dr. Chacko’s
testimony.  Accordingly, we overrule
issue five.

            Having overruled all five issues, we
affirm the judgment of the trial court.

 

                                                                                    

                                                                        /s/        Charles W. Seymore

                                                                                    Justice

 

Judgment rendered and
Opinion filed October 31, 2002.

Panel consists of Justices Edelman,
Seymore and Guzman.

Do Not Publish — Tex. R. App. P. 47.3(b).

 











            [1]  A person commits indecency with a child if he engages in sexual contact
with a child younger than seventeen and not his spouse.  Tex.
Pen. Code Ann. § 21.11(a) (Vernon Supp. 2002).  Sexual contact means any touching of a
child’s genitals, anus, or breast, including through clothing, with the intent
to arouse or sexually gratify the sexual desire of any person.  Tex.
Pen. Code Ann. § 21.11(c) (Vernon Supp. 2002).





            [2]  K.F. described intercourse as “sticking his thang
[sic] in me,” putting his penis “in my middle part,” and his penis trying to go
or going inside her vagina.





            [3]  Further, Shelby approached the bench and asked to fire his
attorney.  He did not bring his clothing
to the court’s attention because he did not know that he “had to.”





            [4]  There is a dearth of cases addressing jail-issued footwear.  See
People v. Mazar, 775 N.E.2d 135, 143 (Ill. App.
Ct. 2002) (heelless shoes issued by jail were not readily identifiable as
prison garb), and Gaito v. Brierly,
485 F.2d 86, 88 (3d Cir. 1973) (work shoes were portion of uniform that,
although unmarked, was identifiable as prison garb).